Richard J. KNOWLES

v.

POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE.

Civ. No. H–86–211(AHN).

United States District Court, D. Connecticut.

March 24, 1987.

---

Spencer P. Clapp, Office of Protection, Hartford, Conn., for plaintiff.

W. Philip Jones, Asst. U.S. Atty., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, Richard J. Knowles, is a legally blind employee of the United States Postal Service. He brings this action pursuant to the Rehabilitation Act, 29 U.S.C. Section 701, *et seq.* He alleges that postal officials have discriminated against him by failing to promote him to a position which requires him to work from heights. Presently pending are the defendant's motion for summary judgment and the plaintiff's motion for partial summary judgment on the count of his complaint which alleges a "surmountable barrier" theory of discrimination. For the reasons set forth below, the defendant's motion for summary judgment is granted, and the plaintiff's motion for partial summary judgment is denied.

### I. *Facts*

The plaintiff suffers from ocular albinism and nystagmus. His vision is measured 20/200 in one eye and 20/400 in the other; however, because his vision problem is permanent and non-correctable, the plaintiff is considered legally blind.

The plaintiff has been employed by the United States Postal Service in its Severely Handicapped Program since January 18, 1982. On April 17, 1983, he received a career appointment to a Level 2 Custodian position. In his position as Custodian, the plaintiff was prohibited from working above floor level. Throughout his employment with the Postal Service, however, the plaintiff has violated the restriction that he work only at ground level. Plaintiff's Deposition at 32–33, 40. On September 15, 1984, he was promoted from a Level 2 Custodian position to a higher paying Level 3 Custodian position. Meanwhile, on or about July 1983, the plaintiff was temporarily detailed to paint letter boxes, a duty

normally performed by Level 6 Letter Box Mechanic. For his exemplary work as a Letter Box Mechanic, the plaintiff receive a letter of commendation on September 19, 1983.

Although plaintiff's position as a Level 6 Letter Box Mechanic was at a higher pay level than his Level 3 Custodian position, the plaintiff knew that his Level 6 position was only a temporary one. Accordingly, on May 3, 1983, the plaintiff took an in-service examination to qualify him for the position of Level 4 Mechanic's Helper. This position would entail climbing ladders and working at various levels above the floor. The petitioner passed the qualifying test; however, he was not placed on the eligible list for promotion to Level 4 Mechanic's Helper. Although the precise date is unclear, the record indicates that before the end of 1983 the plaintiff asked his supervisor Henry Hade, to explain why he had not been placed on the eligible list for the Mechanic's Helper position. Mr. Hade advised him that he was not being placed on the eligible list because his eyesight prevented him from acquiring a driver's license. Plaintiff's Deposition at 7–8. It is also necessary for an applicant to have a driver's license to be considered eligible for custodial positions with the Postal Service; however, that requirement already had been waived for the plaintiff so that he could be hired as a custodian. Before the end of 1983, the plaintiff made one more inquiry of Mr. Hade as to why he was not placed on the eligible list. Again, Hade told him that he could not meet all the job qualifications.

Also before the end of 1983, the plaintiff spoke with his union steward concerning the fact that he had not been placed on the Level 4 Mechanic's Helper list. Because the plaintiff was still working as a temporary Level 6 Letter Box Mechanic, the union steward suggested that the plaintiff "keep a low profile" and that he consider foregoing any attempts to be placed on the eligibility register. The steward also indicated that he might be able to place the plaintiff in a permanent position as a Letter Box Mechanic. On or about November 1, 1985, however, the plaintiff was removed from his temporary Level 6 position and returned to his custodial position. This termination was the result of a union objection to the plaintiff's continued temporary placement in the Level 6 position. Plaintiff's Deposition at 11–12.

The plaintiff made no further inquiries concerning his failure to be placed on the Level 4 Mechanic's Helper eligible list until late 1985. On October 3, 1985, the plaintiff forwarded a written memorandum to Henry Hade and requested that his name be placed on the eligible list for Level 4 Mechanic's Helper. Following the receipt of this memorandum, Hade arranged for the plaintiff's examination by Dr. Louis J. Fauteux, a physician utilized by the defendant. Dr. Fauteux concluded that the plaintiff could not satisfy two requirements for the Level 4 Mechanic's Helper position: (1) He could not obtain a government driver's license; and, (2) He could not climb ladders. Although the defendant was willing to waive the driver's license requirement, Mr. Hade unequivocally informed the plaintiff that "it would be impossible to limit and control [his] activity at floor level only." Hade Deposition at 43–47. Apparently, this determination was based upon the defendant's concern for the plaintiff's safety and safety of others, as well as on the fact that there are only two Level 4 Mechanic's Helper positions in the Hartford Post Office, thus making it extremely difficult to cover for the plaintiff were he not able to perform a function above floor level. Hade Deposition at 36; Plaintiff's Deposition at 29, 33–34.

On October 18, 1985, the plaintiff initiated administrative review of the defendant's determination by having an interview with an Equal Employment Opportunity ("EEO") officer. He claimed that the defendant had discriminated against him because it had failed to make a reasonable accommodation for his handicap which would enable him to be eligible for the Level 4 Mechanic's Helper position. The EEO counselor had a final meeting with the plaintiff on November 8, 1985. On November 18, 1985, the plaintiff filed his formal complaint with the Regional Di-

rector of Employee and Labor Relations, U.S. Postal Service, Northeast Region in New York. By letter dated January 28, 1986, the EEO Officer notified the plaintiff that his discrimination complaint was "rejected for failure to meet the prescribed time limits pursuant to 29 C.F.R. Section 1613.215." The plaintiff filed this action within 30 days of receipt of this rejection notice.

## II. *Questions Presented*

The defendant has moved for summary judgment on the following grounds: (1) The plaintiff has failed to seek timely administrative review of his handicapped discrimination claim; (2) The plaintiff is not an "otherwise qualified handicapped individual;" and (3) The defendant has not discriminated against the plaintiff. In response, the plaintiff has moved for partial summary judgment on his "surmountable barrier" theory of discrimination. He argues that the defendant's failure to consider any form of accommodation concerning his inability to perform Level 4 Mechanic's Helper duties at levels above ground level constitutes *per se* discrimination.

The court finds: (1) The plaintiff's cause of action is time-barred; and (2) Even if not time-barred, the plaintiff has failed to allege a prima facie case. Accordingly, it is unnecessary to address the plaintiff's contention that the defendant's failure to consider a reasonable accommodation of his handicap constitutes a *per se* violation of relevant statutory provisions.

## III. *Discussion*

### A.

■ Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute, and all ambiguities and inferences must be resolved against the moving party.

*American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). This burden is not changed when cross-motions are before the court. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Board of Education,* 667 F.2d 305, 314 (2d Cir.1981).

■ A discrimination complaint must be brought to the attention of the Equal Employment Opportunity Counselor within 30 days of the date of the alleged discriminatory matter. 29 C.F.R. Section 1613.-214(a)(i). The failure to file a timely EEO complaint requires dismissal for failure to exhaust administrative remedies. *See, e.g., Boyd v. U.S. Postal Service,* 752 F.2d 410, 414 (9th Cir.1985); *Woodard v. Lehmen,* 717 F.2d 909, 916 (4th Cir.1983).

The defendant maintains that "it is undisputed that plaintiff was aware no later than the end of 1983 that he was not being placed on the eligibility register for the Mechanic's Helper Level 4 position." Defendant's Memorandum in Support of Motion for Summary Judgment at 3–4; Defendant's Statement of Material Facts at para. 17–21. The failure to be placed on a job eligibility list precludes any possibility of promotion to that position. Thus, if the discriminatory act took place in 1983, this fact is dispositive of this entire action. Because the plaintiff did not see an EEO counselor until 1985 this action is time-barred. However, the plaintiff contends that the actual discriminatory act took place in October 1985, when he formally wrote to Henry Hade and formally requested placement on the list. In the alternative, the plaintiff alleges that the misleading actions of postal officials caused him to forego immediately pursuing his rights, thus tolling the limitation period until late 1985.

■ The facts set forth above are primarily from the defendant's list of "material facts not in dispute" which accompanies its motion for summary judgment. As an

initial matter, the court notes that the plaintiff's failure to comply with this court's rules concerning the appropriate way to oppose defendant's motion for summary judgment is sufficient reason alone to accept the defendant's list of "material facts not in dispute" as true. The Federal Rules of Civil Procedure places the burden on a party opposing summary judgment to produce some support for his position. *Celotex*, 106 S.Ct at 2554 (Moving party may party may meet its burden by pointing out absence of evidence to support non-moving party's position.); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (Plaintiff is required to bring to court's attention indication that his version of relevant facts is not fanciful.) Local Rule 9, R.Civ.P. (D.Conn.) elaborates the requirement that a litigant should produce support for his position as follows:

(c) Motions for Summary Judgment

1. Upon motion for summary judgment, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

2. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

3. The statements referred to above shall be in addition to the material required by these Local Rules and the Federal Rules of Civil Procedure.

In responding to the defendant's motion for summary judgment, the plaintiff failed to provide a statement of material facts to which he contends there is a genuine dispute. Because facts not properly controverted as required by the Federal Rules or Local Rules are properly deemed admitted, the court can properly accept the defendant's statements as true. *Dusanenko v. Maloney*, 726 F.2d 82 (2d Cir.1984); *Wyler v. United States of America*, 725 F.2d 156, 158 (2d Cir.1983).

▮▮▮ Even ignoring the plaintiff's failure to comply with Local Rule 9(c), the court finds that the plaintiff's own admissions and depositions support both defendant's statement of facts and the conclusion that his action is time-barred. In discrimination cases, the time period begins to run on the date the employee receives notice of the discriminatory act. *See Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 59 (2d Cir.1986) (notice of discharge, not date of actual termination, triggers time period in age discrimination case). Although the plaintiff has tried, he cannot reasonably dispute that his cause of action accrued in 1983.

The emphasis in discrimination cases is not on the continuing impact of a particular occurrence, but whether the plaintiff has taken timely action on a violation which has occurred at a precise point in time. *See United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Thus, a court must determine when an unlawful act occurred before it can determine whether action has been filed in a timely manner. *Delaware State College v. Ricks*, 449 U.S. 250, 257–259, 101 S.Ct. 498, 503–504, 66 L.Ed.2d 431 (1980). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979) (quoted with approval in *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257, 101 S.Ct. at 504.

Failure to be placed on the Level 4 Mechanic's Helper list ordinarily precludes any possibility of promotion to that position. Hade Deposition at 11–12. This prerequisite to consideration for a promotion applies to all postal employees similarly situated. The plaintiff admits that he knew he was not going to be placed on that list in 1983, yet he waited until 1985 to file an EEO complaint. If the plaintiff intended to complain of a discriminatory act, he should have complained in 1983, when the act occurred and not in 1985, when its consequences became certain. *See id.*, 449 U.S. at 258–62, 101 S.Ct. at 504–06. (The

failure to offer a college professor tenure, not the loss of his position at a later date, constitutes the discriminatory "act".)

Recognizing this critical deficiency in his case, the plaintiff argues that the defendant's actions constitute sufficient ground to toll the applicable limitation provisions. This argument centers on conversations the plaintiff had with supervisor Hade and on the fact that he worked for approximately two years as a Level 6 Letter Box Mechanic. Even viewing all his contentions in a most favorable light, the plaintiff's argument for equitable tolling of statutory time-bar provisions is without merit.

"[A] timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). However, application of these equitable principles does not alter the fact that the time period for filing a discrimination complaint "begins to run when facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." *Boyd*, 752 F.2d at 414. Under these circumstances, a reasonably prudent person would have known in 1983 that he would not be considered for a Level 4 Mechanic's Helper position when officials refused to place him on the eligibility list. *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir.1986) (unequivocal oral notice of termination sufficient to begin running of limitations period.)

■■■ Equitable tolling must be based upon the actions of someone other than the plaintiff that were misleading or constituted fraudulent conduct. *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir.1984). To invoke principles of estoppel or equitable tolling, the plaintiff must show that he was "affirmatively misled by a Postal Service official [or] that he was unaware of the appropriate administrative procedures." *Boyd*, 752 F.2d at 414. *Accord Baldwin*

*County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984). Thus, the doctrine of equitable tolling applies when a plaintiff is unaware of his cause of action. *Dillman*, 784 F.2d at 60. The plaintiff offers no facts which indicate that the defendant fraudulently concealed the discriminatory act. In 1983, Mr. Hade unequivocally told the plaintiff that he was not being placed on the eligible list because he was unqualified. The fact that the plaintiff's situation may have been ameliorated because of his opportunity to continue in a higher paying, yet temporary, Level 6 position has absolutely no bearing on whether the defendant concealed any cause of action stemming from the unequivocal failure to consider him for the Level 4 position. *Cf. Dillman*, 784 F.2d at 60 ("Appellant's argument about appellee's offers of severance benefits does not even address appellant's awareness of his cause of action."). Accordingly, the plaintiff has presented no evidence that he was unaware of his cause of action because of the defendant's misleading conduct.

■■■ Likewise, to the extent that the plaintiff's tolling argument is based upon principles of equitable estoppel, it is without merit. "[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Id.* at 61. This doctrine is applicable where the defendant has either misrepresented the length of the limitations period or "lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985). As previously discussed, the plaintiff has presented no evidence which indicates any affirmative misrepresentations by the defendant concerning the existence of a cause of action or the length of the limitations period. Moreover, the fact that the defendant allowed the plaintiff to continue in his Level 6 position even after informing him that he was unqualified for a Level 4 position does not provide a basis for invoking

equitable estoppel. *See Mull,* 784 F.2d at 292 (Plaintiff's "hope" for a new position, by itself, does not constitute reason to exercise equitable estoppel.) From the very inception of his duties, the plaintiff knew that the Level 6 position was temporary, and thus subject to termination at any time. In fact, the only evidence the plaintiff presents which even remotely supports an estoppel claim is that a "union official" suggested that he "keep a low profile" so that he could keep his Level 6 detail. Plaintiff's Deposition at 14. However, estoppel focuses on the actions of the defendant; the Postal Service cannot be bound by the actions of an official who does not represent postal service management. *See Jarrell v. U.S. Postal Service,* 753 F.2d 1088, 1092 (D.C.Cir.1985); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978). In short, this record is devoid of conduct which suggests the type of bad faith or dilatory actions which would require this court to estop a statute of limitations defense. *See Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir. 1981).

### B.

 Even if the court were to accept the plaintiff's contention that the discriminatory acts actually occurred in 1985 when he requested in writing that he be placed on the eligible list, it would still have to grant the defendant's motion for summary judgment because the plaintiff has failed to establish a prima facie case of unlawful discrimination. In employment discrimination cases, the burden is on the plaintiff to establish a prima facie case; only then does the burden shift to the defendant to provide a non-discriminatory reason for its actions. *See Zebedeo v. Martin E. Segal Co., Inc.,* 582 F.Supp. 1394, 1411–12 (D.Conn.1984). If a plaintiff fails to establish a prima facie case, it is unnecessary to address any questions concerning reasonable accommodation. *Jasany v. U.S. Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985).

 Part of the plaintiff's burden is to show that, except for his physical handicap,

he is otherwise qualified to fill the position. *Prewitt v. U.S. Postal Service,* 662 F.2d 292, 309 (5th Cir 1981). Whether or not an individual is "qualified" is necessarily a job-specific determination that requires examination of relevant regulations and job descriptions. *Ilan G. Dexler v. Paul N. Carlin,* Civil No. H–83–333, slip op. at 17 (D. Conn. March 20, 1986) (Blumenfeld, J.) "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Federal regulations define a "qualified handicapped person" as follows:

> "Qualified handicapped person" means with respect to employment, a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who, depending upon the type of appointing authority being used:
>
> (1) Meets the experience and/or education requirements (which may include passing a written test) of the position in question, or (2) meets the criteria for appointment under one of the special appointing authorities for handicapped persons.

28 C.F.R. Section 1613.702(f).

The plaintiff has not demonstrated that, as of 1985, he was a "qualified handicapped person" who was entitled to be considered for a position as a Level 4 Mechanic's Helper.

To be placed on a promotion eligibility list, all employees must pass a written qualifying test. On May 3, 1983, the plaintiff took such an examination for the position of Level 4 Mechanic's Helper and was found to be eligible for the position on the basis of that test. Complaint at para. 13. However, in July 1985, the U.S. Postal Service revised its promotion selection procedures. For an employee to be eligible for a Level 4 Mechanic's Helper position under new regulations, all applicants had to take a new examination. Hade Deposition at 51,

69. The plaintiff was aware of this new examination requirement. Plaintiff's Deposition at 14, 38; Hade Deposition at 69–70. Although the plaintiff signed up to take the examination in July 1985, so that he could re-qualify for promotion, he later decided not to take it. Plaintiff's Deposition at 14–15; Hade Deposition at 70. The plaintiff unilaterally determined that the examination "wasn't necessary." Plaintiff's Deposition at 15. Accordingly, as of October 3, 1985, the plaintiff demonstrated that he had no intention of taking the requisite qualifying examination for the position he now seeks. Moreover, he has presented absolutely no evidence that he has ever taken the new examination. Accordingly, even if the court were to find some sort of impermissible discrimination, it could not order the Postal Service to place him in a Level 4 Mechanic's Helper position because the plaintiff has not shown that he is presently qualified within the meaning of 29 C.F.R. Section 1613.702(f).

The plaintiff has stated, however, that the old registration list was in effect until January 1986, thus indicating that he truly did not have to take the new examination in order to be promoted in October 1985. Plaintiff's Deposition at 38. Even if true, this fact alone does not help the plaintiff; it supports the determination that the original failure to place him on the list in 1983 is the true discriminatory act. "[A] failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in refusal to rehire itself, cannot resurrect the old discriminatory act." *Burnam v. Amoco Container Co.,* 755 F.2d 893, 894 (11th Cir. 1985). To hold otherwise would allow a plaintiff to unilaterally resurrect a stale claim simply by reapplying for the same position. *See Ricks,* 449 U.S. at 256–57, 101 S.Ct. at 503 (Limitation periods are meant to protect employers from defending decisions that are long past.) Likewise, the plaintiff cannot resurrect his right to challenge a determination made in 1983 merely by applying for the same position in 1985.

The defendants Motion for Summary Judgment is granted. The plaintiff's Motion for Partial Summary Judgment is denied.