NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 18 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JAMES E. FARRENS,

          Plaintiff-Appellant,

  v.

MARK T. ESPER, Secretary of Defense,

          Defendant-Appellee.

No.   18-56024

D.C. No.
8:14-cv-00407-CJC-RNB

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted December 9, 2019
Pasadena, California

Before: WARDLAW and LEE, Circuit Judges, and KENNELLY,[**] District Judge.

James Farrens appeals the district court's summary judgment order dismissing

his disparate treatment, hostile work environment, and retaliation claims. Farrens,

who served as an Information Systems Security Professional for the Defense

Security Service, alleges that Field Office Chief Debra Habel discriminated against

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

him because of his Japanese descent. We review *de novo* a grant of summary judgment. *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.

1.      The parties do not dispute that Farrens had to bring an administrative claim within 45 days of the acts that he contends violated Title VII. 29 C.F.R. § 1614.105(a)(1). Farrens contacted an Equal Employment Opportunity (EEO) counselor on February 28, 2011, so he may bring claims based only on conduct occurring on January 14, 2011 or later. Farrens argues that the Secretary waived this timeliness argument because the final agency decision did not address timeliness, but this argument is foreclosed by our ruling in *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985) ("The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination."). Conduct predating January 14, 2011, however, may nevertheless be used as evidence to support a timely claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

2.      We first turn to Farrens's disparate treatment claim. The only conduct within the statutory period that can support a disparate treatment claim is Farrens's

reassignment from facility inspections in Hawaii.[1] The district court erred in concluding that there was insufficient evidence to support this claim.

First, the district court improperly weighed the evidence in finding that Habel did not have a role in Farrens's reassignment. Drawing all inferences in Farrens's favor, a reasonable jury could find that Habel in fact had a role in Farrens's reassignment. For example, multiple witnesses testified that Habel was involved in the reassignment of Farrens.

Second, the district court erred in finding that Farrens failed to provide sufficient evidence that the government's proffered non-discriminatory reasons for the reassignment were mere pretext. Two types of evidence can support a finding of discriminatory intent: direct evidence and circumstantial evidence. Direct evidence is evidence that proves discriminatory animus without inference or presumption. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005). Only "very little" direct evidence is needed to maintain a claim. *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991). Circumstantial evidence, on the other hand, is evidence that requires an inference to demonstrate discrimination and

---

[1] The Secretary contends that the reassignment is not an "adverse employment action," but Farrens has provided enough proof at this stage to show that the reassignment "materially affect[s] the . . . privileges of . . . employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)).

must be "specific and substantial" to allow a claim to survive summary judgment. *Coghlan*, 413 F.3d at 1095.

Here, there is nothing ambiguous about Habel's conduct. Taking the witnesses' testimony as true, Habel said that "Asians could not be trusted even if they were naturalized citizens because they were still loyal to their country and their culture was different," and that a facility security officer could not be trusted "because she is Chinese." These remarks are not ambiguous or isolated "stray remarks." *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438–39 (9th Cir. 1990). Moreover, the record could support a finding that Habel engaged in conduct beyond just remarks: witnesses testified that she grew agitated when she saw Asian-American employees working near a security container at a facility and that she held up security clearances for a contractor whose director was Chinese. This is direct evidence of discriminatory intent, and it is enough to create a triable issue as to whether there was a discriminatory motivation behind Farrens's reassignment.

3.    The district court properly dismissed Farrens's hostile work environment claim. To prevail on a hostile work environment claim, Farrens needs to show "that he was subjected to verbal or physical conduct of a racial . . . nature." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017) (internal quotation marks omitted). This conduct must be sufficiently offensive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In addition, for this claim to be timely,

4

Farrens needs at least one offensive act to fall within the statutory time period (*i.e.*, after January 14, 2011). *See Nat'l R.R.*, 536 U.S. at 122. Farrens does not point to any offensive actions during the statutory period, however, so this claim is untimely.[2]

4.        The district court also properly dismissed Farrens's retaliation claim. Though Farrens argues that he was removed from inspections after he reached out to the EEO, he fails to provide evidence that this happened.

We therefore **AFFIRM** the entry of summary judgment as to Farrens's hostile work environment and retaliation claims, but **REVERSE AND REMAND** as to his disparate treatment claim. Each side shall bear its own costs with respect to this appeal.

---

[2]    The dissent argues that Farrens presented sufficient evidence to support his hostile work environment claim. But in the cases cited by the dissent, the conduct was significantly more offensive, and the evidence there suggested that the offensive conduct was motivated by membership in a protected class. *See, e.g., Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008) (fellow doctor "uttered a racial epithet" at African-American plaintiff, and nurse's "frequent requests that [the plaintiff doctor] perform the tasks of a maintenance man" can be construed on a motion to dismiss as being racially motivated); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1105–09 (9th Cir. 1998) (supervisor's snide laughter to allegations of harassment could have been considered a hostile act in light of supervisor's prior conduct, which included telling her "his desire to have sex" with her and stating that "it would be fun to get into [her] pants"). Here, the conduct either is not offensive (*e.g.*, job reassignment) or cannot reasonably be inferred as racially motivated (*e.g.*, mockery of bathroom request).

*Farrens v. Esper*, No. 18-56024
KENNELLY, District Judge, dissenting in part:

I join the majority's decision except with respect to Part 3, from which I respectfully dissent. Because the evidence supports a reasonable inference that Farrens's supervisors engaged in offensive conduct within the statutory period that was "based on" his race, I would reverse and remand the grant of summary judgment on the hostile work environment claim.

Farrens provided evidence that the following occurred in the period after January 14, 2011: (1) he was reassigned from the Hawaii postings; (2) a supervisor refused to speak to him about his discrimination claims; (3) and another ridiculed his request to use the bathroom, suggesting that he "get his bladder checked." The majority concludes that such conduct cannot support a hostile work environment claim, because it was not "conduct of a racial . . . nature." *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 687, 686 (9th Cir. 2017). But conduct that is "based on race" or "because of race" can provide the basis for a hostile work environment claim even if the conduct itself is not of a racial nature. *See, e.g., Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) ("based on race"); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("because of" race). For example, in *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116 (9th Cir. 2008), this court held that a nurse's frequent requests that an African American doctor "perform the tasks of a maintenance man" was discriminatory conduct that

could support a hostile work environment claim. *Id.* at 1123. The nurse's maintenance requests were not of a racial nature—at least not directly—but rather were directed to the doctor because of his race. A reasonable juror could similarly find that the Hawaii reassignment, mockery of Farrens's bathroom request, and refusal to discuss his discrimination complaint were adverse treatment "because of" his race. *See Manatt*, 339 F.3d at 798; *see also Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1106, 1109 (9th Cir. 1998) (holding that supervisor's snide laughter and refusal to discuss plaintiff's discrimination complaints was conduct that could support a hostile work environment claim).

For his hostile work environment claim to survive summary judgment, Farrens also had to provide sufficient evidence for a reasonable juror to conclude that the discriminatory conduct, taken as a whole, was severe and pervasive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Farrens met this burden by raising a triable issue of a continuing violation. Most hostile work environment claims are based on continuing violations—a series of closely related actions that may not be individually significant but have a cumulatively discriminatory effect. *See Draper*, 147 F.3d at 1108. Actions are closely related if they are "similar occurrences that took place within the same general time and stemmed from the same source." *Id.* A plaintiff can rely on a continuing violation to support his hostile work

2

environment claim if he can show that at least one closely related act occurred within the limitations period. *Id.*

Farrens has presented sufficient evidence that Habel's mistreatment was a continuing violation that persisted into the limitations period, when Habel facilitated Farrens's reassignment from the Hawaii inspections. The evidence suggests that the following series of related acts occurred prior to the Hawaii reassignment: between April 2010 and January 2011, Habel increased Farrens's workload, ordered Farrens's colleagues to review his work to see if he "was being honest," reassigned his inspections to others after he had already begun work on them, assigned him to less prestigious inspections than those assigned to his colleagues, and criticized his work in front of others at weekly staff meetings. Additionally, Habel's discriminatory remarks, such as her statement that "Asians could not be trusted," support a reasonable inference that she mistreated Farrens because of his race. *See Johnson*, 534 F.3d at 1123 (holding that allegations of a hiring committee's racist comments directed toward individuals other than the plaintiff supported his hostile work environment claim). Thus, a reasonable juror could conclude that Habel's conduct had a cumulatively discriminatory effect and created a hostile work environment for Farrens. *See Draper*, 147 F.3d at 1108.

For these reasons, in my view, the evidence was sufficient to proceed to trial on Farrens's hostile work environment claim.